IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| BRIAN BRITURE PRUDE, #720851 | § | |
| VS. | § | CIVIL ACTION NO. 9:10cv1 |
| ALICIA BRICE, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Brian Briture Prude, a prisoner confined at the Eastham Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on January 4, 2010. On May 21, 2010, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Ginger Lively, Warden John Rupert and Nurse Tara Patton testified under oath about prison policies and information contained in the Plaintiff's prison records.

1

The Plaintiff testified that on January 9, 2009, while he was at the evening meal, Defendant Officer Brice was at the day room bars talking to Defendant inmates Dennis Jackson and Rodney Rodgers when Jackson called Plaintiff over to their location. They asked Plaintiff's name, his nickname ("Chicago") and in what prison unit he had previously been incarcerated (Stiles Unit, Beaumont, Texas). After dinner, Plaintiff went to evening count time at his cell, after which Defendant Brice let out Three Row, where Plaintiff is housed, for recreation in the day room. Plaintiff testified that as he went to the day room, Defendant Rodgers ran up behind him and hit him in the back of the head with a metal storage lock, knocking Plaintiff to the ground and briefly rendering him unconscious. He testified that he saw Officer Brice look at him and past him as he was struck to the ground, but she did nothing to intervene. He was momentarily blinded by the blow. As he tried to get up, he was struck in the mouth and cut with razor blades. He testified that Rodgers then picked him up and pushed him into nearby cell bars. Plaintiff put his face into Rodgers's chest and held onto the bars, pinning Rodgers there. He was cut on the face and his left arm.

Plaintiff testified that Sergeant Ronnie D. Smith then arrived and sprayed him with pepper spray while he had his face in Rodgers's chest. Smith sprayed both of them, but mostly Plaintiff, apparently believing that he was the aggressor.

Plaintiff was taken to the infirmary and a nurse called in for examination and treatment; he was also examined by video conference with medical personnel at the Estelle Unit, but there was no vehicle to transport him there for further examination.

He further testified that he found out later that Officer Brice had written him up for a disciplinary case as the aggressor in the altercation with Rodgers. He did not know whether Rodgers

2

was ever similarly written up.

Plaintiff testified that he sued Officer Brice because she failed to break up the fight, which he asserted was started by Rodgers. He believed that when he was called to the bars in the day room to speak with Officer Brice, Jackson and Rodgers, that established a connection and a conspiracy between the officer and the offenders. He further testified that when Officer Brice wrote him up as the aggressor in the altercation with Rodgers, he had to "consider" that she conspired with the other two to do him harm. However, he admitted that he had never had any problem with any of the three previously and that the attack was "a big surprise."

Warden Rupert testified that there is no information in Plaintiff's prison records relating to this incident. Further, there was no information in the records before him as to whether Rodgers had been similarly written up for a disciplinary case as Plaintiff had been. He testified that whether an inmate is written up for a fight is based on what the reporting officer actually saw, and noted that an officer may well not have seen the beginning of the fight to determine who started it.

Nurse Patton testified that Plaintiff's medical records reflected that on January 9, 2009, he was taken to the infirmary at Eastham and underwent an examination along with an emergency consultation via telemed from the Estelle Medical Unit. The record reflected that Plaintiff had been in an altercation, that he had lost consciousness but was alert and oriented and in no acute distress. He was reexamined the next morning and was noted with bruises and contusions in his facial area. The record does not state that Plaintiff was cut with razor blades, but noted superficial lacerations to the left side of his face, which were treated with antibiotic ointment. He also had a long laceration to his left arm, which was treated and bandaged. He showed no problems ambulating or with his pupillary response. He had a loose molar, which was referred to dental.

Regional Grievance Supervisor Lively testified that Plaintiff had exhausted his claims. She presented Plaintiff's grievance, medical, classification and use of force records for the Court's review. Plaintiff agreed that the Court may review any of the records.

## Discussion and Analysis

To state a constitutional claim for relief under § 1983, a plaintiff must allege a right secured by the Constitution or the laws of the United States and a violation of that right by one or more state actors. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994). To be a state actor subject to liability under Section 1983, the defendant must act "under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia." 42 U.S.C. § 1983. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)). The Supreme Court has formulated a two-part approach to the issue of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).

"The Eighth Amendment affords prisoners protection against injury at the hands of other inmates." *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citing *Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence on the part of prison officials is not enough. *Id.* at 835. The deliberate indifference standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentional oversights. *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997).

Here, the Plaintiff has alleged facts that arguably support an inference that Officer Brice placed his life in danger. The failure to act that Plaintiff attributes to her, either in seeing an imminent attack and failing to prevent it, or in failing to break up Rodgers's assault on Plaintiff, allegedly led to his injury during Rodgers's attack. This is best characterized as a claim of deliberate indifference. She must answer this claim against her.

As to any claim against Defendant inmates Rodgers and Jackson, the same two elements are necessary for recovery in a section 1983 suit: (1) the plaintiff must show the defendant deprived him of a right secured by the Constitution and laws of the United States; (2) the plaintiff must show the

5

deprivation was committed under color of law, usually by a state official or a private individual in conspiracy with such an official. *Adickes v. Kress*, 398 U.S. 144, 149, 90 S. Ct. 1598, 1604, 26 L. Ed. 2d 142 (1970). Section 1983 does not cover claims against purely private parties, such as a fellow inmate, and, therefore, does not constitute a cognizable federal claim. *See Richard v. Hoechst Celanese Chem. Group, Inc.*, 355 F.3d 345, 352 (5th Cir. 2003).

In his complaint, Plaintiff does allege there was a conspiracy against him, involving Officer Brice and the two inmates, which, if true, might impute "under color of law" to the inmates' actions. To prove a conspiracy, plaintiff must prove an actual deprivation of a constitutional right. *Slavin v. Curry*, 574 F.2d 1256, 1261 (5th Cir. 1978); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984). *See also Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). "The elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999). Mere conclusory allegations of conspiracy, absent reference to material facts, do not state a cause of action under 28 U.S.C. § 1983. *See Marts v. Hines*, 68 F.3d 134, 136 (5th Cir. 1995) (internal citations and quotations omitted), *vacated on other grounds and remanded*, 117 F.3d 1504 (5th Cir. 1997) (*en banc*), *cert. denied*, 522 U.S. 1058, 118 S. Ct. 716, 139 L. Ed. 2d 656 (1998); *see also Scott v. Curry*, 46 Fed. Appx. 732, 732 (5th Cir. 2002) (unpublished opinion), *Decker v. McDonald*, 2010 WL 1424322, at *23 (E.D. Tex. Jan. 11, 2010). Here, the Plaintiff has not alleged facts, either in his complaint or in his testimony during the *Spears* hearing, supporting an inference that there was a conspiracy involving either inmate Rodgers or Jackson that resulted in the violation of his rights under § 1983. The conspiracy claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law in fact.

The claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

It is therefore

**ORDERED** that the Plaintiff may proceed with his deliberate indifference claim against Officer Alicia Brice. It is further

**ORDERED** that the Plaintiff's remaining civil rights claims against inmates Dennis Jackson and Rodney Rodgers are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

So **ORDERED** and **SIGNED** this **24** day of **May, 2010.**

*[signature]*
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE