IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| BRIAN BRITURE PRUDE, #720581 | § | |
| VS. | § | CIVIL ACTION NO. 9:10cv1 |
| ALICIA BRICE, ET AL. | § | |

MEMORANDUM OPINION AND ORDER
GRANTING APPLICATION FOR ENTRY OF
DEFAULT JUDGMENT AGAINST DEFENDANT ALICIA BRICE

Came on for consideration, the Plaintiff's motions for default judgment; he has made two such motions, the first orally during a duly-called and noticed status conference on June 2, 2011, and the second in writing on June 7, 2011 (docket entry #89). Having considered the motions, hearing argument from the Plaintiff thereon in the face of Defendant Alicia Brice's continued and repeated refusal to appear or otherwise participate in these proceedings, and having received testimony as to the damages sustained by Plaintiff Brian Briture Prude, the Court enters this default judgment against Defendant Alicia Brice in her individual capacity.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983 on January 4, 2010. The following facts are drawn from his complaint, the testimony he provided during an evidentiary hearing conducted pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) on May 21, 2010, and other records in this case. On January 9, 2009, while Plaintiff was at the evening meal at his place of confinement in the Eastham Unit of the Texas Department of Criminal Justice ("TDCJ"), Defendant

Officer Brice was at the day room bars talking to inmates Dennis Jackson and Rodney Rodgers[1] when Jackson called Plaintiff over to their location. They asked Plaintiff's name, his nickname ("Chicago") and in what prison unit he had previously been incarcerated (Stiles Unit, Beaumont, Texas). After dinner, Plaintiff went to evening count time at his cell, after which Defendant Brice let out Three Row, where Plaintiff was housed, for recreation in the day room. As Plaintiff went to the day room, Rodgers ran up behind him and hit him in the back of the head with a metal storage lock, knocking Plaintiff to the ground and briefly rendering him unconscious. However, he saw Officer Brice look at him and past him as he was struck to the ground, but she did nothing to intervene. He was momentarily blinded by the blow. As he tried to get up, he was struck in the mouth and cut with razor blades. He testified that Rodgers then picked him up and pushed him into nearby cell bars. Plaintiff put his face into Rodgers's chest and held onto the bars, pinning Rodgers there. He was cut on the face and his left arm.

Sergeant Ronnie D. Smith then arrived and sprayed Plaintiff with pepper spray while he had his face in Rodgers's chest. Smith sprayed both of them, but mostly Plaintiff, apparently believing that he was the aggressor.

Plaintiff was taken to the infirmary and a nurse called in for examination and treatment; he was also examined by video conference with medical personnel at the Estelle Unit, but there was no vehicle to transport him there for further examination.

Plaintiff found out later that Officer Brice had written him up for a disciplinary case as the

---

[1] Plaintiff originally named inmates Jackson and Rodgers as co-defendants to Officer Brice. Both were dismissed by the Court's Memorandum Opinion and Order of Partial Dismissal on May 24, 2010 (docket entry #21). Alicia Brice became the sole Defendant remaining in this lawsuit.

aggressor in the altercation with Rodgers. He did not know whether Rodgers was ever similarly written up.

Plaintiff has stated that he sued Officer Brice because she failed to break up the fight, which he asserted was started by Rodgers. He believed that when he was called to the bars in the day room to speak with Officer Brice, Jackson and Rodgers, that established a connection and a conspiracy between the officer and the offenders. Because Defendant Brice wrote him up as the aggressor in the altercation with Rodgers, he charges that she conspired with the other two to do him harm, although he had never had any problem with any of the three previously and that the attack was "a big surprise."

Defendant Brice was represented by the Office of the Attorney General of Texas, who filed an answer on her behalf on June 16, 2010, asserting a justification defense pursuant to Texas Penal Code 9.53 and an entitlement to qualified, official, sovereign and Eleventh Amendment immunity, "as they apply." *See* Answer (docket entry #24), at 1. Thereafter, the case proceeded with a series of routine motions practice and discovery disclosures, including by Defendant Brice, in accordance with the Court's Scheduling Orders. Trial was set for January 25, 2011.

On January 12, 2011, the first indication of Defendant Brice's impending default occurred. The Court received a call from the Assistant Attorney General ("AAG") then representing Defendant Brice, stating that Brice had informed him that she had "quit" TDCJ and did not want to be involved in the trial. The AAG reported he was attempting to communicate with her regarding her responsibility, potential liability and possible consequences if she refused to appear for trial, as she threatened. On January 18, 2011, the Court conducted a Final Pretrial Conference, at which Plaintiff and the AAG representing Defendant Brice appeared. The AAG advised the Court he had not been

able to contact Defendant Brice and he did not expect her to appear at trial. On January 20, 2011, the AAG filed a Defendant's Motion for Continuance, docket entry #59, stating that Defendant Brice had left him a voice message indicating that her elderly mother would have surgery in Houston on Monday, January 24, and that Brice must be there to attend to her mother's travel and care "for the next several weeks." *Id*. at 1. She would not, therefore, appear for trial as then scheduled. Counsel sought a continuance of the trial. The Court granted the continuance and re-set jury selection and trial for March 29, 2011, at the federal courthouse in Lufkin, Texas.

Unrelated to these events, on February 15, 2011, a different AAG substituted in to represent Defendant Brice.

On March 29, 2011, the Court assembled a jury panel of 21 prospective jurors in Lufkin, Texas. Various witnesses for both parties appeared, the majority of which were for Defendant Brice. Plaintiff was brought to the courthouse from his place of incarceration at the Eastham Unit, escorted by TDCJ and United States Marshal personnel. Two AAGs appeared, representing Defendant Brice. However, Defendant Brice herself failed to appear. Counsel reported that they had attempted to contact Defendant Brice and that she had in fact spoken to or sent text messages and/or e-mail to them to a limited degree. They reported that their first indication that Defendant Brice would not appear had just been received the night before trial. Defendant Brice communicated that she would not appear for trial and excused herself by stating that there was another medical emergency, this time involving her father.

Counsel moved for a second continuance of trial, which the Court granted and excused the 21 members of the jury panel. The Court then conducted certain pretrial matters, including hearing motions in limine and reviewing exhibit lists for admission. By separate order, the Court re-set trial

4

for July 26, 2011, again in Lufkin, Texas.

On April 5, 2011, counsel for Defendant Brice moved to withdraw representation in this matter, citing her continuing refusal to cooperate with counsel and with this Court and her failure to return counsel's phone calls. *See* Docket Entry #77. On April 6, 2011, the Court issued an Order sealing certain documents in the case and providing notice to Defendant Brice of counsel's motion to withdraw, advising her that "her failure to cooperate may subject her to substantial penalties and/or sanctions, including the possibility of judgment being entered against her." *See* Docket Entry #80. The Court gave Defendant Brice 10 days in which to respond to the motion to withdraw and the Clerk served the Order on her by first class mail and certified mail. On April 28, 2011, the United States Postal Service returned the certified mailing to the Clerk marked as unclaimed and unable to forward. Defendant Brice did not otherwise respond to the first class mailing or the Order. On April 27, 2011, the Court issued another Order granting counsel's motion to withdraw as Defendant Brice's attorneys in this matter. Concomitantly, the Court issued an Order setting a Status Conference for June 2, 2011, at 4:00 pm at the federal courthouse in Tyler, Texas. *See* Docket Entry #83. Those Orders were also served on Defendant Brice by first class mail and certified mail; again, the certified mail was returned as unclaimed, but the first class mail was not returned.

On June 2, 2011, the Court convened the Status Conference. Plaintiff appeared via video teleconference. Defendant Brice failed to appear at either the federal courthouse in Tyler or in Lufkin (the two sites of the video teleconference), and failed to contact the Court to either request a continuance of the Status Conference or to advise of her inability to attend.

Therefore, the Court entered Defendant Brice's default from the bench, pursuant to Fed. R. Civ. P. 55(a). The Court then inquired of Plaintiff how he wished to proceed, and Plaintiff

5

responded with an oral motion for entry of default judgment against Defendant Brice. Such an oral motion for entry of default judgment is equally effective as a written motion. *See Johnson v. MDOC*, 2009 WL 224907, at *1 (N.D. Miss. Jan. 28, 2009).

The Court accepted Plaintiff's oral motion for entry of default judgment, construed it as having been made pursuant to Fed. R. Civ. P. 55(b), and had it entered on the docket as of June 2, 2011. The Court then issued an Order Giving Notice on June 6, 2011, providing Defendant Brice with notice of the Court's entry of default against her pursuant to Fed. R. Civ. P. 55(a) and of Plaintiff's oral motion for default judgment. *See* docket entry #88. The Court also conducted a hearing pursuant to Fed. R. Civ. P. 55(b)(2)(B) in aid of determining damages. Plaintiff testified as to the nature, severity and duration of his injuries, the medication he is receiving as a result of such injuries, and requested monetary damages in an amount up to $50,000.00. On June 7, 2011, the Court received Plaintiff's written motion, in which he provides greater information on the nature of his damages and the specific medication he has been receiving. *See* docket entry #89. He reiterated his motion to be awarded $50,000 in compensatory and other damages. *Id*. The Clerk, on the Court's direction, also sent a copy of Plaintiff's written motion by first class mail and certified mail to Defendant Brice at her address of record. On June 28, 2011, the Clerk received the certified mail containing the Court's first Order Giving Notice (docket entry #88) back marked "unclaimed." However, the two notices sent by first class mail have not been returned as of the date of this Memorandum Opinion and Order. Notwithstanding, Defendant Brice has not responded in any manner.

Plaintiff's motions are ripe for a ruling.

## II. LEGAL ANALYSIS

Rule 55 of the Federal Rules of Civil Procedure sets forth certain conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. Fed. R. Civ. P. 55. The Fifth Circuit requires a three-step process for securing a default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir.1996). First, a default occurs when a defendant has failed to plead or otherwise defend within the time required by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Next, an entry of default may be entered by the clerk when the default is established by affidavit or otherwise. Fed.R.Civ.P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Third, a plaintiff may then apply to the clerk or the Court for a default judgment after an entry of default. Fed.R.Civ.P. 55(b); *New York Life Ins.*, 84 F.3d at 141.

Here, Defendant Brice has unarguably failed to defend within the time required. She affirmatively informed her then-counsel, attorneys from the Office of the Attorney General of Texas, that she would not appear at trial on at least two different occasions. She also informed them that she had "quit" her job that was the origin of this matter and no longer wished to participate in this lawsuit. She then refused to talk to them or return their attempts to communicate via numerous means. Her uncooperativeness led counsel to seek withdrawal from representation. She was afforded every notice, sent by the Court to her confirmed address of record, which was provided by her counsel and placed under seal for her protection at counsel's request; the same counsel attempted to give her notice of counsel's request to withdraw. Although the certified mail copy of the Court's notice was returned as unclaimed, the first class mail copy was not and the Court is satisfied that Defendant Brice had notice of the withdrawal of her counsel, which the Court subsequently granted.

Nonetheless, she continued to refuse to appear or otherwise communicate with the Court, either through a representative or in *pro se* fashion, despite continued notices of proceedings (and ultimately the notice of entry of default) sent to her address of record. The Court interprets that action as not only a failure to defend under Fed. R. Civ. P. 55(a), but an affirmative refusal to do so. Therefore, the first step under *New York Life Ins. Co., supra*, Plaintiff's actual default, is met.

The same is true of the second step. Here, Plaintiff did not submit an affidavit of Defendant Brice's default; it occurred before the Court and the Court ordered entry of default appropriately.

Finally, the Plaintiff moved, orally and in writing, for entry of default judgment, the third step of *New York Life Ins. Co*. As the Fifth Circuit has observed, when the party against whom default judgement is sought has appeared in the action, notice of the request for judgment is necessary. *New York Life Ins. Co.*, 84 F.3d at 141 (referring in that instance to summary judgment). Here, separate notice of both Plaintiff's oral motion and his written motion were sent to Defendant Brice's confirmed address of record by two different methods - first class mail and certified mail. On June 28, 2011, the Clerk received the certified mail notice back marked "unclaimed" on June 24, 2011, after two notices to pick up. However, the notice sent by regular first class mail was not returned and the Court is satisfied that the requirement of notice has been met. *Id*. at 142 (finding notice requirement was not met where clerk mailed notice to an address known not to be the party's "last known address").

Therefore, all requirements have been met for entry of default judgment, which precludes a trial on the merits. *Guillory v. Beaumont Independent School District*, 2011 WL 1898939, at *4 (E.D. Tex. May 12, 2011) (citing *Olcott v. Delaware Flood Co.*, 327 F.3d 115, 119 n.3 (10th Cir. 2003)). An oral hearing is not necessary on a motion for entry of default judgment. "In the Fifth

Circuit, not even a summary judgment or default judgment motion requires an oral hearing." *Jones v. Newton*, 775 F.2d 1316, 1318 (5th Cir. 1985) (per curiam) (citations omitted); *see also SUA Ins. Co. v. Buras*, 2011 WL 1304884, at *1 (5th Cir. Apr. 6, 2011) (per curiam) ("'Rule 55(b)(2) does not require the district court to hold either an evidentiary hearing or oral argument' before entering a default judgment." (quoting *S.E.C. v. First Fin. Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)). Furthermore, the Court placed Defendant Brice on notice that it may rule on Plaintiff's motion for default judgment without oral hearing if she did not respond. *See* Order Giving Notice (docket entry #88) at 4. As stated above, the Court has already conducted an evidentiary hearing as to damages.

### III.    FINDINGS

1. The Court **FINDS** that the showing required for an entry of default pursuant to Fed. R. Civ. P. 55(a) has been satisfied.

2. The Court **FURTHER FINDS** that Alicia Brice was served with notice of the application for default judgment at least seven (7) days prior to this determination in accordance with Fed. R. Civ. P. 55(b).

3. The Court **FURTHER FINDS** that Alicia Brice has failed to defend against the claims for affirmative relief alleged by Plaintiff Brian Briture Prude.

4. The Court **FURTHER FINDS** that entry of default judgment against Alicia Brice under Fed. R. Civ. P. 55(b) is appropriate.

5. The Court **FURTHER FINDS** that Plaintiff Brian Briture Prude sustained compensatory damages for the violation of his civil rights by Defendant Alicia Brice under 42 U.S.C. § 1983.

### IV.    ORDER

**IT IS THEREFORE ORDERED** that the Plaintiff's oral Motion for Default Judgment and written Motion for Default Judgment (docket entry #89) against Defendant Alicia Brice in her

individual capacity is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Court renders judgment as follows:

1. Judgment in favor of Plaintiff Brian Briture Prude and against Defendant Alicia Brice on all issues of liability with respect to the claims brought against her pursuant to 42 U.S.C. § 1983;

2. Compensatory damages in the amount of $50,000.00 for the violation of Brian Briture Prude's civil rights under 42 U.S.C. § 1983;

3. Pre-judgment and post-judgment interest as provided by law; and

4. Each party to bear their own costs.

**IT IS SO ORDERED.**

So **ORDERED** and **SIGNED** this **29** day of **June, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE